O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHELLE ESQUIVEL-ROCHA, | Case No. CV 13-6013-SP |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security Administration, | |
| Defendant. | |

**I.**

**<u>INTRODUCTION</u>**

On August 21, 2013, plaintiff Rachelle Esquivel-Rocha filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking review of a denial of Disability Insurance Benefits ("DIB"). Both plaintiff and defendant have consented to proceed for all purposes before the assigned Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff presents two disputed issues for adjudication: (1) whether the Administrative Law Judge ("ALJ") properly rejected the opinion of Dr. Rubalcava; and (2) whether the ALJ provided clear and convincing reasons for

discounting plaintiff's credibility.

Having carefully studied, inter alia, the parties' written submissions, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, there is substantial evidence in the record, taken as whole, to support the ALJ's decision. First, the ALJ properly considered the opinions of Dr. Rubalcava, and gave specific and legitimate reasons supported by substantial evidence for rejecting them. Second, the ALJ properly discounted plaintiff's credibility based on the clear and convincing reasons stated. Therefore, the court affirms the Commissioner's decision denying benefits.

## II.

## **FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff, who was fifty-one years old on her alleged disability onset date, is a high-school graduate with vocational training in medical billing. AR 39-40, 136. Her past experience includes positions as an accounting clerk with various companies. AR 70-71, 161. On May 14, 2010, plaintiff filed for DIB alleging a disability onset date of August 24, 2009 due to: diabetes, neuropathy in both legs, and migraines. AR 136, 160. The Commissioner denied plaintiff's application, after which she filed a request for a hearing.

On October 27, 2011, plaintiff, represented by council, appeared and testified at a hearing before the ALJ. AR 36-69. Laurence Gordon, a vocational expert, and William Rocha, plaintiff's husband, also testified. AR 70-78.

On January 26, 2012, the ALJ denied plaintiff's request for benefits. AR 22-31. Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since August 24, 2009. AR 24.

At step two, the ALJ found plaintiff to have the following medically determinable impairments, which, in combination, are severe: degenerative disc disease, degenerative changes and facet arthropathy of the lumbosacral spine,

diabetes mellitus with peripheral neuropathy, hypertension, headaches, and mood disorder. *Id*.

At step three, the ALJ found plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR §§ 404.1520(d), 404.1525, 404.1526. AR 25.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined plaintiff could perform a full range of light work including the ability to: lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk for six hours of an eight-hour day; and sit six hours of an eight-hour day. AR 27.

At step four, the ALJ found plaintiff is capable of performing her past relevant work as an accounting clerk. AR 31  Accordingly, the ALJ found plaintiff not disabled as defined in the Social Security Act. *Id.*

Plaintiff filed a timely appeal to the Appeals Council, which was denied. AR 4-7, 16. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## **STANDARD OF REVIEW**

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Commissioner must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

reject the findings and set aside the decision to deny benefits.  *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance."  *Aukland*, 257 F.3d at 1035.  Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion."  *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459.  To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion."  *Mayes*, 276 F.3d at 459.  The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"  *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.*  (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

**A.**   **The ALJ Provided Specific and Legitimate Reasons to Reject the Opinions of Dr. Rubalcava**

Plaintiff contends the ALJ improperly rejected the opinion of her treating physician Dr Rubalcava.  Pl. Mem at 5-11.  In determining whether a claimant has a medically determinable impairment, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 404.1527(b).  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 494.1527(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as

4

amended). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 404.1527(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* at 830. Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1067 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Here, the ALJ rejected the opinions of Dr. Rubalcava regarding plaintiff's limitations for the following reasons: (1) to the extent Dr. Rubalcava opined limitations based on his September 8, 2009 lumbar radiculopathy diagnosis, plaintiff failed to establish this was a medically determinable impairment from which she suffered; (2) Dr. Rubalcava's diagnosis of diabetes mellitus out of control does not account for plaintiff's history of non-compliance with her diabetes treatment; (3) Dr. Rubalcava's characterization of plaintiff's peripheral neuropathy as severe is contradicted by that of an endocrinologist, Dr. Reece, and

undercut by plaintiff's failure to adhere to treatment for the condition; and (4) Dr. Rubalcava's opinion regarding plaintiff's mental limitations is contradicted by those of the psychological consultants. AR 29-30. These reasons are specific and legitimate.

### 1. Dr. Rubalcava's Radiculopathy Diagnosis Is Not Supported by the Medical Records

The ALJ found plaintiff failed to establish she suffered from lumbar radiculopathy. AR 25. The ALJ noted that, although Dr. Rubalcava diagnosed plaintiff with radiculopathy on September 8, 2009, he did not include this diagnosis in subsequent reports. *Id; see* AR 240, 253; *see also* AR 435-37. Thus, the ALJ found that if plaintiff ever had radiculopathy, it did not persist for twelve consecutive months. AR 25. And as the ALJ also noted, plaintiff herself denied suffering from radicular symptoms in 2011. AR 25, 440.

These were specific and legitimate reasons to reject Dr. Rubalcava's September 8, 2009 opinion that plaintiff was unable to work at that time, at least to the extent that opinion was based on his lumbar radiculopathy diagnosis. *See* AR 29. Indeed, as Dr. Rubalcava did not continue to diagnose plaintiff with radiculopathy, there is no basis in the record to limit plaintiff's RFC based on radicular symptoms. To the extent Dr. Rubalcava opined limitations based on plaintiffs diabetes, the ALJ's rejection of Dr. Rubalcava's opinion on such grounds is discussed below.

### 2. Dr. Rubalcava's Opinions Are Undercut by Plaintiff's Failure to Adhere to Treatment Plans

The ALJ also rejects the 2009 and 2011 opinions of Dr. Rubalcava to the extent his assessments were based on plaintiff's limitations from diabetes and neuropathy caused by her failure to follow prescribed treatment. AR 29-30. Impairments exacerbated by failure to follow treatment, or that can effectively be controlled through treatment, are not disabling for Social Security benefit

purposes. *See Warre v. Comm'r of the SSA*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits"); *Odle v. Heckler*, 707 F.2d 439, 440 (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments were responsive to medication); *Bergstrom v. Comm'r SSA*, 2012 U.S. Dist. LEXIS 147482 at *13 (D. Or. Oct. 11, 2012) (the ALJ properly discredited a physicians opinion as they did not address plaintiff's noncompliance with diabetes treatment in their assessment).

      Plaintiff admits that her diabetes and neuropathy could be effectively controlled through adherence to the prescribed insulin pump and diet restrictions. AR 56. Furthermore, she concedes that she did not follow the prescribed insulin regime, nor did she follow the carbohydrate restrictions prescribed. AR 49-50, 56, 244, 353. Plaintiff continued to eat donuts, sugar, candy, and other refined sugars in non-compliance with her physician's explicit recommendation otherwise. AR 49, 353. As plaintiff's condition can be reasonably controlled through adhering to her prescriptions and diet, the ALJ is entitled to reject Dr. Rubalcava's assessment to the extent plaintiff worsened her own condition through this non-compliance.

      The ALJ also rejected Dr. Rubalcava's characterization of plaintiff's neuropathy as severe in part because this characterization was undercut by plaintiff's failure to take pain medication as prescribed. *See* AR 30. Although plaintiff was prescribed 300 milligrams of Neurontin three times a day, plaintiff reported not taking her medication on July 5, 2011, and that she was taking only 100 milligrams twice a day on August 12, 2011. AR 50, 438, 440, 446, 451. Although not reflected in the treatment notes, plaintiff explained that she reduced the dose at Dr. Reece's direction to alleviate her dizziness and grogginess caused by the Neurontin, but with the reduced dosage the pain returned. AR 54. Given this explanation, this may not have been a legitimate reason to question Dr. Rubalcava's characterization of plaintiff's neuropathy as severe. But any error in

this regard was harmless, as this was only one of many reasons given by the ALJ for rejecting Dr. Rubalcava's opinions.

In other respects, the ALJ properly rejected Dr. Rubalcava's opinions regarding plaintiff's limitations that did not account for the fact that these limitations were caused by plaintiff's own failure to adhere to treatment plans.

### 3. Dr. Rubalcava's Opinions Were Contradicted by Specialists

The ALJ principally rejected the physical limitations opined by Dr. Rubalcava on June 8, 2011 as inconsistent with the opinion of the endocrinologist, Dr. Reece, to whom Dr. Rubalcava referred plaintiff. AR 30. The ALJ similarly rejected the mental limitations opined by Dr. Rubalcava on June 8, 2011 because they were contradicted by the opinions of the state specialists in psychiatry and psychology. AR 30, 324.

Specialists' opinions are entitled to greater weight regarding a determination in their field. *See Holohan,* 246 F.3d at 1202 ("[T]he regulations give more weight to . . . the opinions of specialists concerning matters relating to their specialty over that of nonspecialists."); *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (holding that specialists in the relevant field are properly entitled to greater weight than other physicians); *Smolen,* 80 F.3d at 1285 (holding that the ALJ should have given greater weight to a physician with the expertise most relevant to the patient's allegedly disabling condition). As Dr. Rubalcava is a family practitioner (*see* AR 253), the ALJ properly gave greater weight to the contradictory opinions of the specialists.

Dr. Rubalcava referred plaintiff to Dr. Reece for evaluation and treatment of her diabetes mellitus. AR 353. Dr Reece found plaintiff suffered from "probable mild neuropathy." AR 354. In rendering his opinion on plaintiff's ability to do work-related activities, Dr. Rubalcava characterized plaintiff's neuropathy as "severe." AR 422. Although this characterization by Dr. Rubalcava was made two years after Dr. Reece found plaintiff's neuropathy to be mild, the ALJ

nonetheless properly rejected Dr. Rubalcava's opinion in favor of the endocrinology specialist, particularly given the other reasons cited by the ALJ for rejecting Dr. Rubalcava's opinion discussed above.

Dr. Rubalcava's opinions on the extent of plaintiff's mental limitations were more directly contradicted by psychological specialists. Dr. Rubalcava opined that plaintiff had serious mental limitations: maintaining regular work attendance, carrying out a complete workday, performing work at a consistent pace, traveling, and using public transportation. AR 458-59. But the state agency psychological specialists noted no such limitations, and observed plaintiff's psychological condition to be non-severe. AR 324-29, 335. As specialists in mental limitations and psychological assessments, these examining physicians' opinions are entitled to greater weight regarding plaintiff's mental limitations. Accordingly, the ALJ properly gave greater weight to the state specialists and rejected Dr. Rubalcava's opinion to the extent it contradicted the state specialists' mental assessments.

In sum, the ALJ properly considered Dr. Rubalcava's opinions and gave specific and legitimate reasons supported by substantial evidence for rejecting them.

**B.   The ALJ Provided Clear and Convincing Reasons for Discounting Plaintiff's Subjective Complaints**

Plaintiff contends that the ALJ improperly discounted her subjective complaints. A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. *Benton v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) But once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); *see also Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain" (citation

omitted)).

Instead, once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaints "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." *Benton*, 331 F.3d at 1040. The ALJ may consider the following factors in weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002).

Here the ALJ discredited plaintiff's statements for four reasons: (1) the objective medical evidence does not support her complaints; (2) plaintiff's non-compliance with her prescribed treatment; (3) her daily activities are inconsistent with her claimed limitations; and (4) her certification that she was able to work, which she made to receive unemployment benefits.

### 1. Objective Medical Evidence

The first reason the ALJ gave for discounting plaintiff's subjective complaints was that the objective evidence was consistent with the RFC found by the ALJ and inconsistent with plaintiff's claim that she cannot work at all. AR 28. Lack of objective medical evidence may be one factor used to evaluate credibility; however, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell,* 947 F.3d at 345; *see also Rollins v. Massanari,* 261 F.3d 853, 856 (9th Cir. 2001).

Here, the ALJ noted that x-rays and an MRI of plaintiff's lumbar spine showed only minimal degenerative changes and disc protrusion. AR 28; *see* AR 292, 296. He further noted that her back pain is controlled by medication. AR 28,

57. These observations by the ALJ are legitimate, but they only relate to her complaints regarding her back pain. Thus, the court turns to the other reasons given by the ALJ for discounting plaintiff's credibility.

### 2. Plaintiff's Failure to Follow Treatment

As discussed above, the ALJ observed plaintiff had been non-complaint with her diet limiting carbohydrates, insulin pump usage, and insulin testing plan. AR 28. The ALJ further noted plaintiff continued to eat donuts, sugar, candy, and other refined sugars in non-compliance with her physician's explicit recommendation otherwise. AR 28, 49. Plaintiff readily admits to this failure, and acknowledges following her diet, insulin, and testing regime could improve her condition. AR 49-50, 56, 244.

The ALJ may properly discredit a plaintiff's subjective complaints for a failure to follow medical treatment. *See Molina,* 674 F.3d at 1113 ("the individual's statements may be less credible . . . if the medical reports or records show that the individual is not following the treatment as prescribed and there are no good reasons for this failure."); *Smolen,* 80 F.3d at 1284; SSR 96-7p, 1996 SSR LEXIS 4. The ALJ noted that plaintiff had health insurance during almost all relevant periods, lacked any mental issues that prevented her from following treatment, and did not have relevant financial constrains that prevented her from using the insulin pump and adhering to the prescribed diet. AR 28-29. Accordingly, plaintiff lacked good reason for this non-compliance.

Given plaintiff's chief physical ailments result from her diabetes and diabetic neuropathy, the ALJ categorized this as a "big noncompliance." AR 49. Accordingly, as plaintiff's testimony and the medical records indicate her non-adherence to medical treatment, the ALJ properly discounted plaintiff's complaints regarding the severity of her conditions due to this non-compliance.

### 3. Plaintiff's Daily Activities

The ALJ found plaintiff's daily activities are inconsistent with her alleged degree of impairment. AR 29. The ALJ noted that plaintiff could: tend to her personal care, prepare her own meals, do household chores, get along with others, drive, shop in stores, handle money, follow instructions, read, and solve puzzles. *Id.* In light of the RFC determination that plaintiff can do light work, the ALJ noted many of these activities were readily transferrable to gainful employment. AR 29; *see Morgan*, 169 F.3d at 600 (a claimant's ability "to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting" may be sufficient to discredit him).

Plaintiff argues that while the ALJ found plaintiff's daily activities involve "the performance of functions readily transferrable to competitive work" (AR 29), he did not explain or support this finding. Pl. Mem. at 18. But while the ALJ's reasoning is not explicit, he does note plaintiff's claimed daily activities are in accordance with the stated RFC determination that plaintiff could perform the full range of light work. *See* AR 27, 29. Thus, while this reason is not as convincing as some of the other reasons given, the ALJ did not err in discounting plaintiff's credibility on this basis.

Furthermore, any error here would be harmless as the ALJ had other clear and convincing reasons to discredit plaintiff, including her failure to follow treatment and her unemployment benefits. *See Batson*, 359 F.3d at 1195-97 (ALJ erred in relying on one of several reasons in support of an adverse credibility determination, but such error was harmless because the ALJ's remaining reasons and ultimate credibility determination were adequately supported by substantial evidence in the record). The ALJ's potential error would not "negate the validity" of his ultimate credibility finding, and the ALJ's decision remains "legally valid, despite such [potential] error." *See Carmickle v. Comm'r*, 533 F.3d 1155, 1162

(9th Cir. 2008) (internal quotation marks and citation omitted).

### 4. Plaintiff's Unemployment Benefits

Finally, the ALJ notes plaintiff has bee receiving unemployment benefits through 2011, well after her 2009 disability onset date. AR 29. Receiving unemployment required plaintiff to certify that she was able to engage in work activity, which is clearly inconsistent with her claims of disability. AR 29, 58-59, 158. *See Carmickle,* 533 F.3d at 1161-62 ("[R]eceipt of unemployment benefits can undermine a claimant's alleged inability to work full-time"); *Copeland v. Bowen*, 861 F.2d 536, 542 (9th Cir. 1988) (holding that receipt of unemployment benefits can indicate plaintiff believes they have the ability to work). As plaintiff is indicating a complete disability, her receipt of unemployment benefits presents a contradiction in her claimed lack of capacity for any work. Plaintiff acknowledged this contradiction in her testimony. AR 58-59. As such, plaintiff's receipt of unemployment benefits constitutes a clear and convincing reason for finding plaintiff less than credible.

In sum, the ALJ properly assessed plaintiff's credibility and gave clear and convincing reasons for discrediting plaintiff's subjective statements regarding the severity of her conditions.

## V.
## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered **AFFIRMING** the decision of the Commissioner denying benefits, and dismissing this action with prejudice.

DATED: July 1, 2014

SHERI PYM
United States Magistrate Judge